CAULDWELL-WINGATE COMPANY, Appellant, *v.* CITY OF NEW YORK, Respondent.

Supreme Court, Appellate Term, First Department, February 4, 1954.

*Herbert S. Greenberg* for appellant.

*Denis M. Hurley, Corporation Counsel* (*Anthony Curreri* and *Seymour B. Quel* of counsel), for respondent.

HECHT, J. Plaintiff appeals from an order entered in the Municipal Court, Manhattan, first district, denying its motion for summary judgment. The same order also denied defendant's motion for similar relief. Although defendant did not appeal from the order, it requests this court to reverse the order insofar as it denied the relief it sought and grant summary judgment in its favor.

It is conceded by both parties that the sole issue presented to the court below and on this appeal, is one of law. It concerns the construction of section C26–228.0 of the Administrative Code of the City of New York. The issue is whether the city can

demand payment for permitting an owner of real property to provide a driveway across the sidewalk on which his property abuts, measuring such payment on the basis of linear feet of curb cuts, even where curb cuts were never physically made.

Plaintiff is a building contractor. It constructed a building to be used and occupied by the United States Post Office Department in Brooklyn, located on the westerly side of 2d Avenue, between 10th and 11th Streets. The building is so constructed that automobiles may drive up to it for the purpose of loading and unloading mail. In order to do so, they must cross the sidewalk adjacent to the building.

After the building had been constructed, plaintiff applied to the department of housing and buildings of the city of New York for issuance of a certificate of occupancy. It was advised that such certificate would not be issued unless and until plaintiff paid the sum of $1,319 for a curb cut permit. Plaintiff paid the fee under protest and brought this action to recover the payment. It takes the position that in this situation where no curb physically separates the sidewalk from the roadway, the city has no right to demand payment for permission to provide a driveway across such sidewalk. It claims payment may only be exacted where physical curbs exist which must be cut.

The relevant provisions of section C26–228.0 of the Administrative Code insofar as they affect the action here involved are as follows: " § C26–228.0 *Driveways across Sidewalks.*— a. General requirements. 1. It shall be unlawful to lower any curb or change the grade of any sidewalk, for the purpose of providing a driveway across such sidewalk, except upon complying with the following conditions, and upon being granted a permit by the superintendent of the borough within which the curb or sidewalk is located. 2. Application shall be made in writing by the owner of the abutting premises to the superintendent of the borough within which such premises are located. Such application shall set forth the points at which such driveway shall begin and end, as measured from the building line of the first street intersecting such curb or sidewalk. 3. In consideration of the granting of such permit, the superintendent having jurisdiction is hereby authorized to charge a fee for the privilege based on the length of curb cut to cover all expenses in connection with the inspection of the alteration of the sidewalk, and its ultimate restoration to original grade. A standard basis for the determination of fees, not exceeding three dollars per linear foot of curb cut shall be established by the superin-

tendent. 4. Every such driveway shall be constructed under the supervision and subject to the direction of the superintendent having jurisdiction, and on condition that, upon failure to comply with all the terms of the permit, the privilege may be revoked and the sidewalk be restored to its original grade, at the expense of the person to whom the permit was granted, or his successor in title to the abutting property. 5. Should the vehicular or other use of such driveway, in the opinion of the superintendent having jurisdiction thereof, be or become dangerous to pedestrians, such superintendent shall give notice in writing to the owner of record of the abutting premises to discontinue such use of such driveway and to restore, within ten days, such curb and sidewalk to their original or proper condition. 6. The superintendent shall refuse a permit to lower any curb or to change the grade of any sidewalk for the purpose of providing a driveway across such curb or sidewalk, when, in his opinion, the actual or intended use of such driveway would endanger pedestrians.''

We believe that the clear purpose of the statute is to require the city's permission before a driveway may be established across a sidewalk. The title of the section — '' Driveways across Sidewalks '' — so indicates. As an incident to this main purpose, permission is granted to lower the grade of the sidewalk and the level of the curb if that be necessary.

The paragraph which fixes the fee (subd. a, par. 3) authorizes the superintendent, in consideration of the granting of the permit, to charge a fee of $3 per linear foot of curb cut to cover expenses in connection with the inspection of the alteration of the sidewalk and its ultimate restoration to original grade.

Clearly, it is contemplated that at some future date the driveway use might be discontinued or revoked by the authorities. Under such circumstances, the abutting owner would be required to restore the sidewalk and curb level to legal grade. The fee paid at the time of the issuance of the permit covers not only the cost of inspection at the time when the driveway is established, but also the cost of inspection at the time when the sidewalk grade and curb level are restored.

We find no ambiguity in the statute. The superintendent of the department of housing and buildings properly demanded payment for a curb cut permit before issuing the certificate of occupancy. Plaintiff's motion for summary judgment is therefore properly denied.

However, the court erred in denying the defendant's motion for the same relief; therefore the order, insofar as it denied that motion must be reversed and defendant's motion granted.

The order denying plaintiff's motion for summary judgment should be affirmed, with $10 costs. Defendant's motion for summary judgment granted.

HAMMER and HOFSTADTER, JJ., concur.

Ordered accordingly.